**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **TAMARAE WICHMAN,** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO.** |
| **v.** | § | |
| | § | **SA-11-CV-0170 NN** |
| **MICHAEL J. ASTRUE,** | § | |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| **Defendant.** | § | |

## ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION

### I. Introduction

Plaintiff Tamarae Wichman seeks review and reversal of the administrative denial of her application for disability insurance benefits ("DIB") by the Administrative Law Judge ("ALJ").[1] Plaintiff contends the ALJ's conclusion that she retained the residual functional capacity ("RFC") to perform work available in the local and national economies is not supported by the substantial evidence of the record.[2]  For this reason, Plaintiff asks the court to reverse the Commissioner's decision and remand the case with instructions to "conclude any hearings within 90 days of any order of remand, issuing any ALJ decision within 120 days of remand and conducting appeals council review within 180 days of remand."[3]

I have jurisdiction over this matter under 28 U.S.C. § 636(c).  After the parties consented

---

[1] Docket Entry 1.  See also Administrative Transcript ("Transcript"), at 7-19.

[2] Docket Entries 1, 11.

[3] Docket Entry 11, at 16.

to proceed before a magistrate judge for all matters in this case,[4] the district judge transferred this action to me for disposition.[5]

## II. Jurisdiction

The court has jurisdiction under 42 U.S.C. § 405(g).

## III. Administrative Proceedings

According to the record in this case, Plaintiff fully exhausted her administrative remedies prior to filing this action in federal court.  Plaintiff applied for DIB on December 5, 2008, alleging a disability beginning May 1, 2008.[6]  The SSA denied Plaintiff's application both initially, on March 2, 2009,[7] and on reconsideration, May 19, 2009.[8]

On May 29, 2009, Plaintiff requested a hearing before an ALJ.[9]  The hearing was held on January 26, 2010.[10]  Plaintiff was represented by counsel at the hearing.  Plaintiff's attorney examined and questioned Plaintiff;[11] the medical expert, Dr. Alice Cox;[12] and the vocational expert, Judith Harper,[13] during the hearing.

---

[4] Docket Entries 6 and 9.

[5] Docket Entry 10.

[6] Transcript, at 155-161.

[7] Transcript, at 79-82.

[8] Transcript, at 84-86.

[9] Transcript, at 87.

[10] Transcript, at 25-73.

[11] Transcript, at 30-45, 55-58.

[12] Transcript, at 45-54, 63.

[13] Transcript, at 54-72.

Plaintiff, who was forty-eight years old at the administrative hearing, testified that she lived with her husband and her seventy-one-year-old mother.[14]  She stated that she quit her last work in May 2008 as an operating room nurse because she was unable to focus.[15]  Plaintiff told the ALJ that she was able to do laundry, dusting, light cooking, grocery shopping and reading about three to four times a week, but that she had assistance from her mother to perform these tasks and to remind her to take her medicine.[16]  Plaintiff testified that she often had to read the same page several times because she cannot focus and retain information.[17]  She testified that she needed to nap one to two hours a day[18] and tried to walk or do water aerobics for exercise.[19]

Plaintiff stated that she applied for work as a nurse with a flu clinic, but was not called in for an interview.[20]  However, she also told the ALJ that she cannot work as a result of muscle pain, problems with memory and mental focus, as well as pain in her joints, knees, lower back, left hip, neck, shoulders and right big toe.[21]  Plaintiff testified that three or four days of the week she is unable to leave her house due to her pain level and/or depression.[22]  She also explained that

---

[14] Transcript, at 31, 36.

[15] Transcript, at 34, 35.

[16] Transcript, at 36, 37.

[17] Transcript, at 41.

[18] Transcript, at 37.

[19] Transcript, at 39.

[20] Transcript, at 41.

[21] Transcript, at 42.

[22] Transcript, at 43, 44.

she had at least one doctor's appointment per week which lasted from two hours to a full day.[23]

The ALJ also heard testimony from medical expert Dr. Alice Cox at the hearing.[24]  Dr. Cox reviewed the extensive list of Plaintiff's diagnoses[25] and past medical complaints.[26]  Dr. Cox then testified that there was little objective medical evidence in the record to support Plaintiff's alleged limitations.[27]  Similarly, Dr. Cox testified that there was nothing in the record to substantiate the findings of Plaintiff's treating physician, Dr. Valenta, that Plaintiff had disabling limitations.[28]  Dr. Cox concluded with the opinion that Plaintiff is capable of concentrating, accepting instructions and responding appropriately to changes in routine work settings.[29]

Vocational expert Judith Harper also testified at the administrative hearing.[30]  Ms. Harper classified Plaintiff's past work as an operating nurse as medium, skilled with SVP of seven.[31] She stated that Plaintiff cannot perform her past work[32] but can, based on the hypothetical proffered by the ALJ,[33] do light office work or work as a quality assurance coordinator, a sock

---

[23] Transcript, at 44.

[24] Transcript, at 45-54, 63.

[25] Transcript, at 45-46.

[26] Transcript, at 47.

[27] Transcript, at 51.

[28] Transcript, at 52, 54.

[29] Transcript, at 53.

[30] Transcript, at 54-72.

[31] Transcript, at 58.

[32] Transcript, at 59.

[33] Transcript, at 58-59.

4

checker, a furniture rental clerk, a facility rental clerk or a back office nurse.[34]

During questioning by Plaintiff's attorney, Ms. Harper opined that an individual who needs one work day off a week to attend a doctor's appointment, or extra morning, afternoon and lunchtime breaks, cannot maintain employment.[35]  Similarly, Ms. Harper testified that an individual who cannot work a full eight-hour workday due to fatigue or can sit for only two hours a day and stand/walk one hour a day cannot obtain and sustain employment.[36]

On March 8, 2010, the ALJ issued a decision concluding that Plaintiff was not under a "disability," as defined by the Social Security Act ("the Act"), at any time through the date of the decision.[37]  Specifically, the ALJ found Plaintiff retained the RFC to perform work available in the local and national economies.[38]

After receiving the ALJ's unfavorable decision dated March 8, 2010, Plaintiff requested review of the decision on March 25, 2010.[39]  On January 4, 2011, the Appeals Council determined no basis existed for granting Plaintiff's request for review and denied Plaintiff's request.[40]  Plaintiff commenced the instant action in this court on March 2, 2011.[41]

---

[34] Transcript, at 59-62.

[35] Transcript, at 66-67.

[36] Transcript, at 71-72.

[37] Transcript, at 7-19.

[38] Id.

[39] Transcript, at 4.

[40] Transcript, at 1-3.

[41] Docket Entry 1.

## IV.  Issue Presented

Whether the ALJ's decision is supported by substantial evidence and comports with relevant legal standards?

## V.  Analysis

*A.    Standard of Review*

In reviewing the Commissioner's decision denying disability insurance benefits, I am limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[42]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[43]

In reviewing the Commissioner's findings, I must carefully examine the entire record, but refrain from re-weighing the evidence or substituting my judgment for that of the Commissioner.[44]  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[45]  The courts must consider four elements of proof in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age,

---

[42]  Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. § 405(g).

[43]  Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990) (quoting Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983)).

[44]  Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995); Villa, 895 F.2d at 1021 ("The court is not to reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner.").

[45]  Martinez, 64 F.3d at 174.

education and work experience.[46]

1.      Entitlement to Benefits

Every individual who is insured for disability insurance benefits, has not reached

retirement age, has applied for benefits, and is under a disability is entitled to receive disability

insurance benefits.[47]  The term "disabled" or "disability" means the inability to "engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than twelve months."[48]  A claimant shall be determined to

be disabled only if his physical or mental impairment or impairments are so severe that he is

unable to not only do his previous work, but cannot, considering his age, education, and work

experience, participate in any other kind of substantial gainful work which exists in significant

numbers in the national economy, regardless of whether such work exists in the area in which he

lives, whether a specific job vacancy exists, or whether he would be hired if he applied for

work.[49]

2.      Evaluation Process and Burden of Proof

The Commissioner's Regulations prescribe a five-step process for evaluating disability

claims.[50]  A finding that a claimant is disabled or not disabled at any point in the process is

---

[46] Id.

[47] 42 U.S.C. § 423(a)(1).

[48] Id. § 1382c(a)(3)(A).

[49] Id.  § 1382c(a)(3)(B).

[50] 20 C.F.R. § 404.1520.

7

conclusive and terminates the Commissioner's analysis.[51]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[52]  If so, the claimant will be found not disabled regardless of her medical condition or her age, education, or work experience.[53]  The second step involves determining whether the claimant's impairment is severe.[54]  If it is not severe, the claimant is deemed not disabled.[55]  In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[56]  If it meets or equals a listed impairment, the claimant is deemed disabled without considering her age, education, or work experience.[57]  If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's RFC and the demands of her past work.[58]  If she is still able to do her past work, she is not disabled.[59]  If she cannot perform her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given her residual capacities, age, education, and work experience, to do other work.[60]  If she cannot do other work, she will be found disabled.  The claimant bears the

---

[51] Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

[52] 20 C.F.R. § 404.1520.

[53] Id.

[54] Id.

[55] Id.

[56] 20 C.F.R. § 404.1520.

[57] Id.

[58] Id.

[59] Id.

[60] Id.

burden of proof at the first four steps of the sequential analysis.[61]   Once she has shown that she is

unable to perform her previous work, the burden shifts to the Commissioner to show that there is

other substantial gainful employment available that the claimant is not only physically able to

perform, but also, taking into account her exertional and non-exertional limitations, able to

maintain for a significant period of time.[62]   If the Commissioner adequately points to potential

alternative employment, the burden shifts back to the claimant to prove that she is unable to

perform the alternative work.[63]

      In the instant case, the ALJ reached the unfavorable decision at step five of the evaluation

process.[64]   At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful

employment since her alleged onset date of disability.[65]   The ALJ then concluded at steps two

and three that Plaintiff had a combination of impairments (fibromyalgia syndrome, lumbago and

obesity and major depressive disorder, moderate) which was severe, but did not meet or

medically equal a listed impairment.[66]   At step four, the ALJ found that, although she cannot

return to her past relevant work,[67] Plaintiff retained the residual functional capacity

> to perform light work…Claimant can never crawl or climb ladders, ropes or scaffolds.
> Claimant can understand, remember and carry out simple or detailed instructions (but not
> complex) and is able to make routine work-related decisions, attend and concentrate for

---

[61] Leggett, 67 F.3d at 564.

[62] Watson  v. Barnhart, 288 F.3d 212, 217 (5th Cir. 2002).

[63] Anderson v. Sullivan, 887 F.2d 630, 632-33 (5th Cir. 1989).

[64] Transcript, at 7-19.

[65] Transcript, at 12.

[66] Id.

[67] Transcript, at 18.

extended periods, adequately interact with co-workers, supervisors and the public, and can respond appropriately to changes in a routine work setting.[68]

At step five, the ALJ held that given Plaintiff's age (an individual closely approaching advanced age), education (at least a high school education), and vocational experience (transferable job skills from past relevant work),[69] Plaintiff can perform work as an office nurse, a quality assurance and scheduling coordinator, a stock checker for apparel, a furniture rental consultant, and a storage facility rental clerk.[70]  Based on the foregoing, the ALJ concluded that Plaintiff was not under a disability.

B.     *Did the ALJ use the correct legal standards and support the decision with the substantial evidence of the record?*

Plaintiff challenges the ALJ's decision, asserting that the ALJ: (1) failed to apply the correct legal standard in concluding that some of Plaintiff's exertional impairments were not severe; (2) failed to accord appropriate weight to the opinions of Plaintiff's treating physicians; and (3) failed to consider and include all the effects of Plaintiff's fibromyalgia in the RFC assessment.[71]  Plaintiff argues that these mistakes constitute reversible error and asks the court to remand this action with specific instructions.

1.     *Did the ALJ properly assess all of Plaintiff's severe impairments?*

In her first point of error, Plaintiff argues that the ALJ committed reversible error by failing to cite and apply properly the standard for a severe impairment as articulated in Stone v.

---

[68] Transcript, at 14.

[69] Transcript, at 18.

[70] Transcript, at 19.

[71]  Docket Entry 11.

Heckler.[72]  Plaintiff contends that the failure to use the Stone language requires remand as a matter of law.  Plaintiff further asserts that had the ALJ employed the correct standard, she would have concluded that Plaintiff's "sleep disturbance," chronic fatigue syndrome and hypothyroidism were severe impairments.[73]  In response, Defendant maintains the ALJ fulfilled the requirements of Stone and its progeny.  Defendant further argues that Plaintiff failed to meet her burden of proving that the conditions at issue constitute separate, severe impairments.[74]

At step two of the sequential evaluation process, the ALJ must identify which of a claimant's conditions constitute "severe" impairments.[75]  In 1985, the Fifth Circuit interpreted the regulatory definition of severity in Stone v. Hecker,[76] providing:

'[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'[77]

To ensure the adjudicator applies the correct legal standard, the Fifth Circuit requires an ALJ to cite to the Stone decision:

we will in the future assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c)(1984) is used.  Unless the correct standard is used,

---

[72] Docket Entry 11, at 8-11; Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985).

[73] Docket Entry 11, at 8-11.  The medical evidence in the record establishes that Plaintiff has obstructive sleep apnea (OSA).  See, e.g, 321, 328, 535, 558, 632, 642, 680, 1198; Docket Entry 11.  As a result, this Court construes the references to Plaintiff's "sleep disturbance" in her brief as references to her OSA.

[74] Docket Entry 13, at 4-10.

[75] 20 C.F.R. § 1520(a)(4)(ii).

[76] Stone, 752 F.2d 1099.

[77] Stone, 752 F.2d at 1101(quoting Estran v. Heckler, 745 F.2d 340, 341 (5th Cir. 1984)).

11

the claim must be remanded for reconsideration.[78]

Since <u>Stone</u>, the Fifth Circuit has made it clear that its intention was not to mandate the use of specific verbiage in the hearing decision.  The Court held:

> *Stone* does not require a wholesale remand of all severity cases.  A case will not be remanded simply because the ALJ did not use 'magic words.'  We remand only where there is no indication the ALJ applied the correct standard.  We must read the opinion of the ALJ carefully to ensure that he or she used the 'slight impairment' standard in the non-severity determination.[79]

In this case, the ALJ articulated the severity standard in the following way:

> An impairment or combination of impairments is 'severe' within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  An impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p).[80]

Considering the language used in the decision, Plaintiff asserts that the ALJ employed an incorrect standard for nonseverity and, consequently, neglected to find her sleep disturbance, hypothyroidism and chronic fatigue syndrome severe impairments.[81] Defendant, on the other hand, argues that any remand predicated on the above statement of nonseverity would result in an erroneous requirement for the ALJ to use magic words.[82]  More importantly, Defendant contends <u>Stone</u> was intended to address cases adjudicated at step two of the sequential evaluation

---

[78] <u>Stone</u>, 752 F.2d at 1106.

[79] <u>Hampton v. Bowen</u>, 785 F.2d 1308, 1311 (5th Cir. 1986).

[80] Transcript, at 11.

[81] Docket Entry 11, at 8-11.

[82] Docket Entry 13, at 6-8.

process.[83]   Therefore, a remand on the basis of <u>Stone</u> is inappropriate in cases such as this one which were decided at subsequent steps in the sequential evaluation process.[84]

The <u>Stone</u> requirements were imposed on administrative adjudicators primarily in an effort to target the unfairly premature disposition of cases at step two of the sequential evaluation process.[85]   The mandate to remand cases using the wrong severity standard was introduced by the following preamble, "In view of both the Secretary's position in this case and our recent experience with cases where the disposition has been on the basis of nonseverity…."[86]   After <u>Stone</u>, the Fifth Circuit decided a number of cases which, though importantly distinguishable from the instant case, lend some support to Defendant's position that remand is not required when the disability determination proceeds beyond the second step of the sequential evaluation process.[87]   In <u>Chaparro v. Bowen</u>, for example, the Court concluded that the plaintiff waived his right to assert a severity argument because he failed to raise the contention at the district court.[88]

---

[83] Docket Entry 13, at 8.

[84] Docket Entry 13, at 8-10.

[85] <u>Stone</u>, 752 F.2d at 1106.

[86] <u>Id</u>.

[87] <u>See</u> <u>Lopez v. Bowen</u>, 806 F.2d 632, 634, fn.1(5th Cir. 1986)(finding no reversible error because the ALJ determined that the plaintiff had severe impairments and decided the case at step four of the sequential evaluation process); <u>Adams v. Bowen</u>, 833 F.2d 509, 512 (5th Cir. 1987)(concluding there was no reversible error because the ALJ acknowledged the plaintiff's "significant impairment" and adjudicated the case at step four of the sequential evaluation process); <u>Jones v. Bowen</u>, 829 F.2d 524, 527, n.1 (5th Cir. 1987)(holding that no error existed in the ALJ's finding that plaintiff's hypertension was "mild" because the case was adjudicated at steps four and five of the sequential evaluation process); <u>Moon v. Bowen</u>, 810 F.2d 472, 473 (5th Cir. 1987)(finding no reversible error in the ALJ's severity analysis because the case was adjudicated at the fifth step of the process); <u>Mays v. Bowen</u>, 837 F.2d 1362, 1363, 1364(5th Cir. 1988)(holding that the ALJ applied the correct <u>Stone</u> standard but failed to articulate which specific conditions were severe impairments.  The Court concluded there was no reversible error, in part, because the case was adjudicated at the fifth step of the sequential evaluation process.)

[88] <u>Chaparro v. Bowen</u>, 815 F.2d 1008, 1011(5th Cir. 1987).

The Fifth Circuit noted, however, "In any event, this case did not turn on whether or not Chaparro's impairment was severe, but on whether Chaparro could return to his past relevant work—an inquiry unaffected by the test set forth in <u>Stone</u>."[89]

The instant case went beyond the second step of the sequential evaluation process when the ALJ found, at the fifth step, that Plaintiff retained the RFC to perform work available in the local and national economies.[90]  It might appear, therefore, that Plaintiff's <u>Stone</u> arguments are unavailing.

However, the specific language the ALJ used in defining the nonseverity standard has, time and again, been found to be an erroneous construction of <u>Stone</u>.  The ALJ's nonseverity standard does not comport with the requirements of <u>Stone</u> in two important ways.  First, the language in the ALJ's decision misconstrues the "minimal effect" portion of the <u>Stone</u> requirement.  According to <u>Stone</u>, the impairment is not severe only when it is a "slight abnormality" with "such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work…."[91]  In order for an impairment to be found "not severe" under <u>Stone</u>, therefore, it cannot impose any interference on the ability to perform work activities.[92]  In contrast, the ALJ's nonseverity language allows for "no more than a minimal effect on an individual's ability to work…."[93]  Thus, the ALJ's version permits some interference

---

[89] <u>Chaparro</u>, 815 F.2d at 1011.

[90] Transcript, at 7-19.

[91] <u>Stone</u>, 752 F.2d at 1101.

[92] <u>Id</u>.

[93] Transcript, at 11.

with work, while <u>Stone</u> does not allow for any interference.  Second, the ALJ entirely omitted the last portion of the <u>Stone</u> standard "irrespective of age, education or work experience."[94]

A similar misconstruction of <u>Stone</u> was the reason for remand in <u>Loza v. Apfel</u> even though that case was adjudicated at step five of the sequential evaluation process.[95]  Recent cases in this district, as well as the Northern District of Texas, have also concluded that "*Stone* does not allow for any interference with work ability, not even minimal interference."[96]  The failure to use the wrong nonseverity language is a legal error which requires remand.[97]

Defendant contends that Plaintiff failed to meet her burden of proving that she has diagnosed medical conditions which were not adjudicated as "severe impairments."[98]  Defendant alleges that the conditions identified in Plaintiff's brief—Hashimoto Thyroiditis (hypothyroidism), chronic fatigue syndrom and sleep disturbance—do not impose any additional limitations on Plaintiff beyond those imposed by Plaintiff's fibromyalgia.  Consequently, Defendant asserts that Plaintiff failed to establish reversible error.[99]  This argument is

---

[94] <u>Stone</u>, 752 F.2d at 1101.

[95] <u>Loza v. Apfel</u>, 219 F.3d 378, 392-393, 398 (5th Cir. 2000).  In <u>Loza</u>, the ALJ concluded that the plaintiff's mental impairment was not severe because plaintiff was "'at most, slightly restricted by his mental impairment in his activities of daily living.'" <u>Id.</u>, at 392.  As in this case, the <u>Loza</u> ALJ's nonseverity language allowed for some effect on the individual's ability to work and omitted the "irrespective of age, education or work experience" portion of the <u>Stone</u> language.  <u>Id.</u>

[96] <u>Padalecki v. Astrue</u>, 688 F.Supp.2d 576, 580 (W.D. Tex. 2010) (citing <u>Scroggins v. Astrue</u>, 598 F. Supp. 2d 800, 805 (N.D.Tex. 2009)).  <u>See also</u> <u>Hutchins v. Astrue</u>, 2011 WL 1136246 (N.D.Tex. Mar. 25, 2011), at *3; <u>Sanders v. Astrue</u>, 2008 WL 4211146 (N.D. Tex. Sept. 12, 2008), at *7-8.

[97] <u>See</u> **<u>Loza</u>**, 219 F.3d at 391-92; <u>Padalecki</u>, 688 F. Supp. 2d at 581; <u>Scroggins</u>, 598 F.Supp.2d at 806-807; **<u>Stone</u>**, 752 F.2d at 1106. Because the ALJ clearly misconstrued the <u>Stone</u> language in the decision, the Commissioner's assertion that the ALJ's citation to SSR 85-28 complies with <u>Stone</u> is unavailing.  <u>See</u> Docket Entry 13, at 6.  It is evident that the ALJ used the wrong legal standard in the decision.  Transcript, at 11.

[98] Docket Entry 13 at 9-10.

[99] <u>Id.</u>

unconvincing as the medical evidence in the record establishes that Plaintiff's sleep apnea and Hashimoto Thyroiditis are separate, diagnosed medical conditions which impact her pain and fatigue levels.[100]   Therefore, the ALJ's failure to cite <u>Stone</u> properly and to analyze the severity of all of Plaintiff's disorders constitutes legal error.[101]   For these reasons, Plaintiff's request for relief is <u>GRANTED</u> and this action <u>REMANDED</u>.   On remand, the ALJ is directed to articulate and apply properly the <u>Stone</u> standard to assess the severity or nonseverity of all of Plaintiff's diagnosed impairments.   The Court declines to impose the time requirements requested by Plaintiff in her brief.

        2.         *Did the ALJ properly analyze the opinions of Plaintiff's treating physicians?*

In her second point of error, Plaintiff contends that the ALJ failed to assess the opinions of the treating physicians in accord with the relevant legal standards.[102]   Specifically, Plaintiff asserts that the ALJ failed to give controlling weight to the opinion of her treating physician, Dr. Valenta, without performing the analysis required by the applicable regulations.[103]   Plaintiff further asserts that Dr. Valenta's opinions were supported by the findings of Plaintiff's treating rheumatologist, Dr. Bernard Hildebrand.[104]   Defendant, on the other hand, argues that the ALJ's assessment of the treating physicians' opinions is supported by the substantial evidence of the

---

[100] <u>See, e.g.</u> Transcript, at 287, 308, 320, 321, 328, 632, 680, 1198. Defendant is correct, however, that the chronic fatigue syndrome appears to be inextricably intertwined with Plaintiff's fibromyalgia and not a separate impairment.  <u>See</u> Transcript, at 632.

[101] <u>Carey v. Apfel</u>, 230 F. 3d 131, 142 (5th Cir. 2000) (quoting <u>Kane v. Heckler</u>, 731 F.2d 1216, 1220 (5th Cir. 1984) ("To establish prejudice, a claimant must demonstrate that he or she 'could and would have adduced evidence that might have altered the result.'").

[102] Docket Entry 11, at 11-14.

[103] <u>Id</u>.

[104] <u>Id</u>.

record.[105]

The ALJ may decide the weight to accord the various pieces of evidence in the record and receives great deference as to decisions regarding the same.[106]  However, the "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports h[er] position."[107] When assessing the opinion of a treating physician, the ALJ must give it controlling weight if she finds that it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case…."[108]  If the ALJ declines to afford controlling weight to the opinions of a treating physician, the ALJ must explain in precise detail the reasons for deciding to do so.[109]

To guide the ALJ through this process, the Regulations outline six factors for the ALJ to consider and discuss when explaining the weight accorded to the treating physician's medical opinion.[110]  Those criteria are: (1) the examining relationship (the ALJ should generally give more weight to a source who examined the claimant);[111] (2) the treatment relationship (the ALJ

---

[105] Docket Entry 13, at 10-16.

[106] Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985), "The administrative fact finder is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly."  See also Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir. 1988).

[107] Loza, 219 F.3d at 393.

[108] 20 C.F.R. § 404.1527(d)(2).  See also Loza v. Apfel, 219 F.3d 378, 393 (5th Cir. 2000) (quoting Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978) ("'[t]he expert opinion[] of a treating physician as to the existence of a disability [is] binding on the fact-finder unless contradicted by substantial evidence to the contrary) (brackets in original)."  See also Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000).

[109] 20 C.F.R. § 404.1527(d)(2).  See Loza, 219 F.3d at 395 ("The ALJ cannot reject a medical opinion without an explanation.").

[110] 20 C.F.R. § 404.1527(d)(2).

[111] 20 C.F.R. § 404.1527(d)(1).

should generally give more weight to a source who treated claimant),[112] including the length,

nature and extent of the treatment relationship, as well as the frequency of the examination(s);[113]

(3) the supportability of the opinion (the ALJ should give greater weight to the source who

provides more relevant evidence to support the opinion);[114] (4) consistency (the ALJ should give

greater weight to opinions which are consistent with the record as a whole);[115] (5) specialization

(the ALJ should generally give greater weight to the opinion of a specialist);[116] and (6) any other

factors which "tend to support or contradict the opinion."[117]  Ordinarily, the ALJ must use "all of

the factors provided in 20 CFR 404.1527…." to explain the weight given to the opinion of a

treating physician.[118]

 The primary piece of treating physician evidence at issue is a physical capacities

evaluation form filled out by Plaintiff's treating physician, Dr. Jerome Valenta.[119]  On the

questionnaire, Dr. Valenta concluded that Plaintiff can sit for no more than two hours, stand or

walk for less than one hour, and cannot use her hands to perform repetitive motions during an

---

[112] 20 C.F.R. § 404.1527(d)(2).

[113] 20 C.F.R. § 404.1527(d)(2)(i)-(ii).

[114] 20 C.F.R. § 404.1527(d)(3).

[115] 20 C.F.R. § 404.1527(d)(4).

[116] 20 C.F.R. § 404.1527(d)(5).  See also Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990) (citing Dorsey v. Heckler, 702 F.2d 597, 603 (5th Cir. 1983)).

[117] 20 C.F.R. § 404.1527(d)(6).

[118] Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, SSR 96-2p (hereafter "SSR 96-2p"), July 2, 1996, at * 4 ("treating source medical opinions…must be weighed using all of the factors provided in 20 CFR 404.1527…").  See also Newton, 209 F.3d at 456 ("This court now…holds that an ALJ is required to consider each of the § 404.1527(d) factors before declining to give any weight to the opinions of the claimant's treating specialist.").

[119] Transcript, at 1109-1112 (cited in the hearing decision as Exhibit 21F).

eight-hour work day.[120]  Dr. Valenta stated that Plaintiff suffers from such disabling fatigue and

pain that Plaintiff cannot work full-time even in a sedentary position.[121]

The ALJ addressed this report in the decision.[122]  The ALJ noted Dr. Valenta's

conclusions that Plaintiff had disabling limitations and referenced a medical report by Plaintiff's

other treating physician and specialist, Dr. Hildebrand, which "did not give an opinion of

claimant's capacity for work."[123]  The ALJ then wrote, "The undersigned finds that the sitting,

standing, walking limitations determined are not supported in the examination findings or

imaging study evidence."[124]  In choosing to embrace the conclusions of the non-examining state

agency medical consultants and the non-examining testifying medical expert, the ALJ held:

> Based on a thorough review of all evidence and testimony, the undersigned finds that the
> opinion of Dr. Valenta concerning the claimant's ability to sit, stand, and walk is not
> consistent with the evidence as a whole and is not entitled to significant weight in the
> decision making process.[125]

Defendant implicitly concedes that the ALJ failed to perform the analysis mandated by

the applicable regulation.[126]  Instead, Defendant asserts that the ALJ's decision to accord little, if

any, weight to treating physician Valenta's assessment of Plaintiff's functional limitations is

---

[120] Transcript, at 1109.

[121] Transcript, at 1110-1111.

[122] Transcript, at 17.

[123] Id.

[124] Id.

[125] Id.

[126] Docket Entry 13, 10-16.  See 20 C.F.R. § 404.1527(d); SSR 96-2p, at *5.

supported by the substantial evidence of the record.[127]  Specifically, Defendant refers the Court to the following: (1) Plaintiff's daily activities and testimony that she looked for some part time work;[128] (2) a treatment note in which Plaintiff denied having difficulty functioning at work;[129] and (3) the fact that Plaintiff's treating physician, specialist Dr. Bernard Hildebrand, never labeled Plaintiff disabled in his treatment notes nor imposed work limitations on her but, instead, encouraged Plaintiff to exercise.[130]

However, an ALJ's failure to apply the correct legal standard is a different inquiry than whether the decision is supported by the substantial evidence of the record.  When the ALJ fails to use the appropriate legal standard in assessing the opinions of a plaintiff's treating physician, the case must be remanded.[131]  For these reasons, Plaintiff's request for relief is GRANTED and this action REMANDED so that the ALJ can properly assess the opinions of Plaintiff's treating physicians, Dr. Valenta and Dr. Hildebrand, in accordance with the appropriate legal standards. If warranted, the ALJ must obtain a consultative examination or additional testimony from a

---

[127] Docket Entry 13, at 10-16.

[128] Docket Entry 13, at 11.  The ALJ is not empowered to substitute his lay conclusions about a Plaintiff's ability to perform daily activities or exercise for medical opinion about functional limitations.  Frank v. Barnhart, 326 F.3d 618, 622 (5th Cir. 2003).  Similarly, a Plaintiff can still "qualif[y] as disabled under the act…even if he is sometimes capable of working for short spurts."  Frank, 326 F.3d at 621.  In addition, there is a significant amount of conflicting evidence in the record about Plaintiff's ability to perform routine activities successfully on a sustained basis, as well as the range in severity of Plaintiff's pain.  See Transcript, at 286, 308, 320, 328, 642, 680, 717, 960, 1199 & 1200-1201.

[129] Docket Entry 13, at 13.  Plaintiff was not working at the time this comment was made in her treatment records.  See Transcript, at 286.  This same treatment record also stated that Plaintiff's pain could not be controlled. Transcript, at 286-287.

[130] Docket Entry 13, at 12, 14.  See Frank, 326 F.3d at 622 ("Although common sense might dictate that a person who can [exercise] can hold down a job, common sense about medical matters is often wrong.").

[131] See Newton, 209 F.3d at 456; SSR 96-2p, at *4; Martinez v. Chater 64 F.3d at 173; Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990); 42 U.S.C. § 405(g).

medical expert to clarify Plaintiff's functional abilities and limitations in light of a proper assessment of the treating physicians' conclusions.

      3.      *Did the ALJ properly consider Plaintiff's fibromyalgia?*

In her third, and final, point of error, Plaintiff contends that the ALJ failed to "completely consider the nature and limitations caused by the [fibromyalgia] condition when formulating the RFC and assessing Wichman's credibility."[132]  In opposition, Defendant argues that a severe impairment does not necessarily constitute a disabling condition.  Moreover, Defendant contends that Plaintiff is, in truth, asking the Court to reweigh the evidence which is beyond the parameters of the Court's authority.[133]

The Court may not reweigh the evidence.[134]  Moreover, even if evidence preponderates against the ALJ's decision, the reviewing court must affirm the decision if it comports with the applicable legal standards and is supported by the substantial evidence in the record.[135]  Thus, this Court cannot and will not substitute its own judgment for that of the ALJ.  Because the ALJ failed to use the appropriate legal standards in assessing the opinions of the treating physicians' opinions, on remand, the evidence regarding Plaintiff's fibromyalgia, and any consequential functional limitations, will naturally be revisited.  Therefore, the Court DENIES Plaintiff's request for relief on the basis of Plaintiff's third alleged point of error.  Because of the other flaws in the administrative decision, however, Plaintiff's request for relief will likely be

---

[132] Docket Entry 11, at 14.

[133] Docket Entry 13, at 16-18.

[134] Johnson, 864 F.2d at 343.

[135] Id.

addressed on remand.

### VI.  <u>Conclusion</u>

Based on the foregoing, Plaintiff's request for relief is <u>GRANTED</u>, the decision of the Commissioner is <u>REVERSED</u> and this action <u>REMANDED</u> for further proceedings consistent with this opinion.

**SIGNED** on March 7, 2012.

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE